**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nadira Cavalic, | No. CV-15-00234-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Nadira Cavalic seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    BACKGROUND**

Plaintiff was born in June 1977 and was 34 years old on the alleged disability date. She has at least a high school education and is able to communicate in English. She previously worked as a mail handler, hotel housekeeping manager, and hotel maid. She has degenerative disc disease of the lumbar and cervical spine, which she alleges causes constant pain. She reports she is unable to sit, stand, or walk for more than a half hour. She is able to drive, perform personal care, make simple meals, read, and watch

television. She has no problem paying attention and is able to follow written and spoken instructions very well. She lives with her husband and two children, who take care of housecleaning and shopping. She goes outside twice a day, walking, driving, or riding in a car. She talks on the telephone to family and friends daily and visits with family and friends weekly.

On January 13, 2012, Plaintiff applied for disability insurance benefits, alleging disability beginning July 1, 2011, subsequently amended to February 28, 2012. On April 29, 2013, she appeared with her attorney and testified at a hearing before the ALJ. On May 17, 2013, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. On December 14, 2014, the Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On February 10, 2015, Plaintiff sought review by this Court.

**II.   STANDARD OF REVIEW**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted); *accord Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence

is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

**III.    FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2014, and that she has not engaged in substantial gainful activity since February 28, 2012. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine at the L5-S1 levels and of the cervical spine at the C7-T1 levels. At step three, the ALJ determined

that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally. She can sit, stand and walk about six hours total in an eight-hour workday. She is unlimited in her ability to kneel and balance, can frequently climb ramps and stairs, crouch and bend and can occasionally climb ladders, ropes and scaffolds, stoop and crawl. She should avoid concentrated exposure to vibration but has no other manipulative, visual, communicative or environmental limitations.

The ALJ further found that Plaintiff is unable to perform any of her past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Weighing the Opinion of Treating Physician Michael A. Steingart, D.O.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* at 830; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "Even if a treating physician's opinion is

contradicted, the ALJ may not simply disregard it. The ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford the treating physician's medical opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631. In deciding weight to give any medical opinion, the ALJ considers not only whether the source has a treating or examining relationship with the claimant, but also whether the treatment or examination is related to the alleged disability, the length of the relationship, frequency of examination, supporting evidence provided by the source, and medical specialization of the source. 20 C.F.R. § 404.1527(c).

The ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The opinion of any physician, including that of a treating physician, need not be accepted "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

### 2. Dr. Steingart's Opinion

Dr. Steingart began treating Plaintiff in November 2011, and in January 2012 he surgically removed her herniated disc at the L5-S1 level. On November 2, 2012, Dr. Steingart completed a Physical Medical Source Statement. The ALJ provided a detailed description of Dr. Steingart's opinion:

> Specifically, the doctor assessed that the claimant could only sit for 20 minutes at a time for a total of less than two hours in an eight-hour workday and stand and walk for 10-15 minutes at one time for a total of less than two hours in an eight-hour workday. She would also require shifting positions every 15 minutes for approximately one minute. She would need

to take unscheduled breaks every 20-40 minutes for five minutes.  She did not require the use of a cane or other hand-held device.  She could rarely lift and carry even 10 pounds and could only occasionally climb stairs and ladders.  She could rarely twist, stoop, bend, crouch or squat.  She would likely be off task 20-25 percent of the time or more.

### 3.     The ALJ's Hearing Decision

The ALJ afforded Dr. Steingart's opinion "little weight."  The ALJ acknowledged that Dr. Steingart is a treating orthopedist and the doctor who performed Plaintiff's surgery, but the ALJ found that Dr. Steingart's progress notes showed stabilization of Plaintiff's symptoms.  In particular, the ALJ noted Dr. Steingart's progress notes stated that Plaintiff reported "gross improvement from the surgery" on February 14, 2012, Plaintiff walked into the examination room with a limp and walked out without a limp on April 30, 2012, Plaintiff walked without a limp on August 30, 2012, and Plaintiff had gradually improved over time on October 25, 2012.  The ALJ also found that Dr. Steingart's assessment was "far too extreme to be worthy of total reliance."  In other words, the ALJ did not reject Dr. Steingart's opinion entirely, but he did not consider it as controlling because it was contradicted by Dr. Steingart's progress notes and it was "far too extreme" considering the record as a whole.

Moreover, the ALJ identified and summarized the assessments of two examining neurologists and one pain specialist.  Dr. Francis, a neurologist, found Plaintiff only mildly limited and found no evidence of muscle weakness or loss of sensation.  Dr. Tumialan, a neurologist, could find no abnormality other than compression of the exiting root nerve at the L5 level from a lateral disc bulge at the L5-S1 nerve root and was surprised at the degree of symptoms Plaintiff was experiencing.  Dr. Turley, a pain specialist, found subjective symptoms of back, leg, arm, and hand pain, and he ordered a cervical MRI to evaluate her neck pain and radicular symptoms.  The MRI showed mild foraminal stenosis on the left at the C4-C5 level, but was otherwise entirely normal.  The ALJ also considered the State Agency opinions and found them to be consistent with and

well supported by the objective medical evidence. He accepted them as an accurate representation of Plaintiff's status.

Thus, the ALJ identified clear, convincing, specific, and legitimate reasons for affording Dr. Steingart's opinion little weight.

### B. Substantial Evidence Supports the ALJ's Determination that Plaintiff Does Not Have an Impairment or Combination of Impairments that Meets or Medically Equals the Severity of Listing 1.04A.

Plaintiff contends that the ALJ erred by finding that Plaintiff does not have an impairment or combination of impairments that meets or medically equals Listing 1.04(A). To meet the requirements of a listing, a claimant must have a medically determinable impairment that satisfies all of the criteria in the listing. 20 C.F.R. § 404.1525(d).

Listing 1.04(A) requires a disorder of the spine, such as degenerative disc disease, resulting in the compromise of a nerve root or the spinal cord, with evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." The ALJ found that Plaintiff had not submitted evidence satisfying each of the requirements in Listing 1.04(A) at the level of severity required to meet a Listing.

Plaintiff contends that objective evidence for each of the requirements in Listing 1.04(A) can be found elsewhere in the ALJ's decision. The ALJ found Plaintiff has degenerative disc disease of the lumbar and cervical spine. He referred to a January 2010 MRI, from before Plaintiff's surgery, showing "mild to moderate degenerative disc disease at the L5-S1 levels with an eccentric disk bulge to the left resulting in mild to moderate left lateral recess stenosis encroaching the left S1 nerve root with mild posterior displacement." The ALJ explained that the March 15, 2013 MRI of the cervical spine was entirely normal with only mild foraminal stenosis. He also noted that on August 23,

2011, physical examination showed "only mild deterioration with evidence of only mild limitation of motion on flexion and extension, no deformities and mild tenderness over the S1 joints." The ALJ further noted that on August 23, 2011, physical examination showed normal muscle tone and bulk with no atrophy. Although some physical examinations showed positive straight-leg raising, others showed negative straight-leg raising, and none showed testing from both sitting and supine positions. And the ALJ pointed out that on January 8, 2013, Dr. Steingart found only mild to moderate tenderness along the spine, mild paraspinal tenderness, and negative straight-leg raising.

Thus, the ALJ did not err by finding that Plaintiff does not have a medically determinable impairment that satisfies all of the criteria in Listing 1.04(A).

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 9th day of September, 2015.

Neil V. Wake
United States District Judge